**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.    **CV 20-3030-JFW(AGRx)** | Date:  June 30, 2020 |
| Title:       Darrell Kroeger -v- Vertex Aerospace LLC, et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

| | |
|---|---|
| **PROCEEDINGS (IN CHAMBERS):** | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) AND 12(b)(6) [filed 4/29/20; Docket No. 19]; and** |
| | **ORDER DENYING PLAINTIFF'S MOTION FOR REMAND [filed 5/22/20; Docket No. 37]** |

On April 29, 2020, Defendants Vertex Aerospace LLC (formerly known as L3 Communications Vertex Aerospace, LLC and erroneously sued as L3 Technologies, Inc.) ("Vertex")[1], Patrick K. Bantilan ("Bantilan"), and Paul Sichenzia ("Sichenzia") (collectively, "Defendants") filed a Motion to Dismiss Pursuant to FRC 12(b)(1) and 12(b) ("Motion to Dismiss"). On May 11, 2020, Plaintiff Darrell Kroeger ("Plaintiff") filed his Opposition. On May 18, 2020, Defendants filed a Reply. On May 22, 2020, Plaintiff filed a Motion for Remand. On June 1, 2020, Defendants filed their Opposition. On June 8, 2020, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matters appropriate for submission on the papers without oral argument. The matters were, therefore, removed from the Court's June 22, 2020 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

**A.    Plaintiff's Employment with Vertex and *Kroeger I***

---

[1] Vertex changed its name from L3 Communications Vertex Aerospace, LLC to Vertex Aerospace LLC during the pendency of Plaintiff's action. However, to avoid confusion, the Court will refer to Plaintiff's former employer as "Vertex" throughout this Order.

Plaintiff is a former Vertex aircraft mechanic. Bantilan and Sichenzia were Kroeger's supervisors at Vertex during the relevant time period. During his employment at Vertex, Plaintiff was subject to collective bargaining agreements ("CBAs") negotiated by the International Association of Machinists and Aerospace Workers, AFL-CIO District Lodge 725 and Aeronautical Industrial Local Lodge 727-P ("Union").

On October 6, 2017, Plaintiff filed a Complaint against Vertex and Bantilan in Los Angeles Superior Court, alleging claims for: (1) failure to pay overtime; (2) violation of California Labor Code § 6310; (3) violation of California Labor Code § 1102.5; (4) unreimbursed business expenses; (5) failure to timely provide payroll and personnel records; (6) violation of the Ralph Act; (7) violation of the Bane Act; (8) disability discrimination; (9) failure to accommodate; (10) failure to engage in the interactive process; (11) retaliation in violation of public policy; and (12) intentional infliction of emotional distress. In his Complaint, Plaintiff alleged that Vertex failed to comply with the CBAs and interfered with NLRA protected activities. For example, Plaintiff alleged that he "and others, were not afforded their lunch breaks in compliance with . . . the Collective Bargaining Agreement" (Complaint, ¶ 20), and that he did not receive a 2.6 percent wage increase required under the "union contract" (Complaint, ¶ 36). Plaintiff also alleged that Bantilan "prevented Plaintiff from working overtime, while a new, probationary employee was given the overtime" in "violation of union rules" (Complaint, ¶¶ 64-65), and that Vertex attempted to "avoid paying overtime" in violation of the CBAs (Complaint, ¶¶ 48 and 103-106). In addition, Plaintiff alleged that Bantilan refused to authorize Plaintiff's "deployment premium" required under the CBA (Complaint, ¶¶ 49-50), and that Vertex prohibited him from traveling on a scheduled flight "in violation of the [CBA] . . . and the National Labor Relations Act" (Complaint, ¶ 105). Plaintiff alleged that he was "discriminated against . . . due to my union membership and union activity" and that the discrimination was a "violation of [the] collective bargaining agreement . . . [and] a violation of the National Labor Relations Act." Complaint, ¶¶ 105-106.

On November 21, 2017, Vertex and Bantilan removed that action to this Court, which was entitled *Kroeger v. L3 Technologies, Inc., et al.*, Case No. 17-8489-JFW (AGRx) ("*Kroeger I*"). On December 21, 2017, the Court dismissed all unserved Doe defendants. Vertex and Bantilan subsequently moved to dismiss all of Plaintiff's claims (with the exception of the fifth cause of action for failure to timely provide payroll and personal records) on the grounds that they were preempted by the Labor Management Relations Act ("LMRA") and the National Labor Relations Act ("NLRA"). Plaintiff moved to remand *Kroeger I* on the grounds that Plaintiff's claims were not preempted by LMRA or NLRA and, thus, there was no basis for subject matter jurisdiction.[2] On March 15, 2018, the Court denied Plaintiff's motion to remand and granted Vertex and Bantilan's motion to dismiss. The Court dismissed without leave to amend all of Plaintiff's claims except for the fifth cause of action and remanded Plaintiff's sole remaining claim to Los Angeles Superior Court. In finding LMRA preemption, this Court concluded that:

> Plaintiff's claims largely turn on alleged adverse actions and legal violations, the propriety of which the CBAs govern and that are (or have been) the subject of

---

[2] Prior to Vertex and Bantilan filing their motion to dismiss, Plaintiff dismissed his first cause of action. Plaintiff also dismissed his second through fifth causes of action against Vertex and his sixth, seventh, and eleventh causes of action against Bantilan.

multiple contractual grievances by Plaintiff. (Compl. ¶¶ 103-106). Such allegedly adverse actions include, but are not limited to: (a) failing to grant Plaintiff a light duty work assignment; (b) assigning overtime to probationary employees; (c) assignment to deployments; (d) pay during deployments; (e) "show up" compensation for the day Plaintiff was removed from a flight; and (f) writing up an disciplining Plaintiff. (See, e.g., Compl. ¶¶ 27, 31, 49, 50 64, 86, 88, 104, 112, 114, 137(3), 194, 217). To determine if these alleged adverse actions were based on legitimate non-discriminatory/non-retaliatory factors, and/or otherwise violated the law, the Court must "determine whether [the company] was acting consistently with its duties under the CBA . . . by interpreting [its] provisions." [Citations]. Accordingly, the LMRA preempts Plaintiff's expense reimbursement, discrimination, and retaliation-based claims . . . Similarly, the LMRA preempts Plaintiff's IIED claim . . . Determining whether conduct is sufficiently extreme for an IIED claim "is not an independent, nonnegotiable standard of behavior . . . [I]t depends upon the relationship between [the parties] such that the terms of the CBA are relevant in evaluating the reasonableness or outrageousness of defendants' conduct." [Citations]. Thus, Plaintiff's IIED claim is preempted as it requires analysis and interpretation of multiple provisions of the CBAs. Because Plaintiff's second, third, fourth, sixth, seventh, eighth, ninth, tenth, and twelfth causes of action are preempted . . . they are dismissed.

*Kroeger v. L3 Techs., Inc.*, 2018 WL 1357363, *4-5 (C.D. Cal. Mar. 15, 2018). Similarly, in finding NLRA preemption, this Court concluded that:

> Plaintiff's second, third, sixth, seventh, and twelfth causes of action principally relate to activity that is arguably protected or prohibited by Sections 7 and 8 of the Act. For example, Plaintiff alleges that L3 retaliated because, among other things, he and other employees: (a) complained about alleged non-compliance with the CBA; (b) complained about L3's payment and allocation of overtime; (c) complained about Bantilan's threat to shoot Plaintiff for filing grievances; and (d) engaged in union activities. (Compl. ¶¶ 20, 64-65, 68, 104-106, 135-137, 165-167, 173, 216-217, 226) . . . Read as a whole, Plaintiff's central contention is that L3 and Bantilan retaliated against him for engaging in NLRA protected activities. [Citations] . . . Because Plaintiff's . . . causes of action are intertwined with activity that is arguably protected or prohibited by Sections 7 and 8 of the Act, they are preempted and, thus, are dismissed.

*Kroeger*, 2018 WL 1357363, *3-4.5

### B.   Vertex's Timecard Investigation and Arbitration Proceedings

During the pendency of *Kroeger I*, Vertex conducted an investigation into possible timecard fraud by Plaintiff, and, on March 8, 2018, Vertex placed Plaintiff on administrative leave while it completed its investigation. Based on its investigation, Vertex concluded that Plaintiff knowingly recorded and was compensated for hours he did not work. As a result, he was terminated on April 2, 2018. Plaintiff filed grievances contesting the investigation and his termination, which eventually proceeded to arbitration. At the arbitration, Plaintiff, who was represented by counsel, argued that

he was terminated without cause in retaliation for this lawsuit and his grievances.  After a two day hearing, the arbitrator denied Plaintiff's grievance, and concluded that:

> The Employer discharged the Grievant for time card fraud that caused the Employer to mischarge the Government for 52 hours . . . of labor that he did not perform . . . Time card fraud is "as serious as any violation . . . " because it implicates the ethical profile of the Company . . . [and] its status as a federal contractor.  I find that the Grievant engaged in time card fraud.

In addition, the arbitrator found that Vertex "compiled a substantial record establishing Grievant's time card fraud" and that Plaintiff did not offer "a shred of evidence . . . that his discharge was retaliatory."  The arbitrator also considered and rejected Plaintiff's allegation that Vertex retaliated against him by mailing important correspondence to an incorrect address.  In evaluating the termination penalty, the arbitrator explained:

> I find Grievant's discharge to be supported by just cause . . . Employer Work Rule No. 33 states: "Employees will not commit any form of dishonesty or fraud, including falsifying facts to management, or falsifying … personnel, company or government records" . . . The suggested discipline for a first violation of this rule is suspension or discharge, depending on the severity of the violation.  The Employer considers falsifying time records, which may result in mischarging labor costs to the Government, to be a severe violation and therefore a dischargeable offense . . . The Employer is subject to being audited anytime . . . and would risk losing any federal contract . . . [if] the Employer's practices were . . . out of compliance with the Government's ethical standards . . . Grievant . . . understood . . . these things to be true . . . Time card fraud is a form of stealing . . . Stealing is an offense involving moral turpitude, and as such, does not require . . . progressive discipline.

**C.     Plaintiff's First Amended Complaint**

On March 4, 2020, Plaintiff filed a First Amended Complaint ("FAC") in Los Angeles Superior Court, alleging claims against Vertex for:(1) wrongful termination in violation of public policy; (2) retaliation in violation of public policy; (3) disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (4) hostile work environment harassment in violation of FEHA; (5) failure to timely produce payroll and personnel records; and (6) failure to prevent harassment, discrimination, or retaliation in violation of FEHA.  Plaintiff's fourth cause of action for hostile work environment harassment in violation of FEHA is also alleged against Sichenzia.[3]

---

[3]  Sichenzia was not named as a party in the original Complaint in *Kroeger I*.  Although the parties dispute whether Sichenzia was properly added as a party in the FAC, it is undisputed that Plaintiff's allegations against Sichenzia would not relate back to the original Complaint and, thus, Plaintiff's claim against Sichenzia is untimely.  *See Woo v. Superior Court*, 75 Cal. App. 4th 169, 180 (1999).  Accordingly, in addition to the reasons set forth below, Plaintiff's fourth cause of action against Sichenzia is also dismissed with prejudice because it is untimely.  Moreover, Plaintiff did not allege any claims against Bantilan in his First Amended Complaint.  Accordingly, Bantilan is **DISMISSED with prejudice** from this action.

Although Plaintiff does not refer to the CBA, union rules, his grievances, or the NLRA, Plaintiff's allegations in the FAC are virtually identical to the allegations in his original Complaint in *Kroeger I*. For example, Plaintiff alleges that he and other workers were not given their lunch breaks in compliance with California labor laws and when they complained, management was dismissive and/or threatening.  FAC, ¶ 10.  Plaintiff also alleges that Bantilan prevented him from working overtime, while a new, probationary employee was given overtime.  FAC, ¶ 19.  In addition, Plaintiff alleges that Defendants subjected him to adverse employment actions by failing to compensate him for fourteen hours of work caused by his removal from the flight on October 14, 2016 (FAC, ¶ 95), and that Vertex improperly barred him from deployments because he was not fit for duty, did not adequately accommodate his work restrictions, and refused to pay deployment premiums.  FAC, ¶¶ 18, 41-43, 49.  Plaintiff also alleges that he was terminated after: (1) he reported that an employee of Vertex threatened to shoot himself or others; (2) he complained that he was being denied reasonable accommodations, and (3) he complained that he was wrongfully denied work assignments and unfairly accused of being "unfit for duty.  FAC, ¶ 86.

On March 31, 2020, Defendants removed this action, entitled *Kroeger v. Vertex Aerospace LLC, et al.*, Case No. 20-3030-JFW (AGRx) ("*Kroeger II*"), to this Court.[4]  In their Motion to Dismiss, Defendants move to dismiss the FAC on the grounds that Plaintiffs' claims are preempted by the LMRA and the NLRA and because Plaintiff has failed to state a claim.  In his Motion to Remand, Plaintiff moves to remand this action to Los Angeles Superior Court on the grounds that his claims are not preempted by the LMRA and NLRA and, thus, there is no basis for subject matter jurisdiction.

## II. Legal Standard

### A. Rule 12(b)(1)

The party mounting a Rule 12(b)(1) challenge to the Court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration.  See *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual").  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true.  See, e.g., *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment.  It also need not presume the truthfulness of the plaintiff['s] allegations."  *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Pub. Co., Inc. v. General Tel & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. . . '[N]o

---

[4]  Although *Kroeger I* (Case No. 17-8489-JFW (AGRx)) and *Kroeger II* (Case No. 20-3030-JFW (AGRx)) have different case numbers, *Kroeger II* is a continuation of *Kroeger I*.

presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'") (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (9th Cir. 1977)). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

### B. Rule 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further

amendment would be futile.").

### C. Motion to Remand

A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir.1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999). Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."*)*.

## III. Discussion

### A. The LMRA and NLRA Preempt Plaintiff's First, Second, Third, Fourth, and Sixth Causes of Action

In their Motion to Dismiss, Defendants argue, as the Court held in its March 15, 2018 Order in *Kroeger I*, that Plaintiff's first cause of action for wrongful termination in violation of public policy, second cause of action for retaliation in violation of public policy, third cause of action for disability discrimination in violation of FEHA, fourth cause of action for hostile work environment harassment in violation of FEHA, and sixth cause of action for failure to prevent harassment, discrimination, or retaliation in violation of FEHA are preempted by the LMRA and the NLRA. In his Opposition, Plaintiff argues that his claims are not preempted by the LMRA because the claims alleged in the FAC are different than the claims he alleged in *Kroeger I*.[5]

#### 1. The Standard for LMRA and NLRA Preemption

Section 301 of the LMRA grants federal courts jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a); *Franchise Tax Bd. of Cal. v. Contr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983). Section 301 calls on federal courts to "fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Courts construe Section 301 broadly such that it covers state claims that require interpretation of labor agreements. *See, e.g., Atkins v. Praxair Inc.*, 182 Fed. Appx. 724, 726-27 (9th Cir. 2006). The LMRA preempts claims concerning rights that exist solely by virtue of a CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). It also preempts claims that are independent of a labor contract where their resolution requires interpretation of a CBA. *Id.*; *Allis-Chalmers Corp.*, 471 U.S. at 220. Claims preempted by Section 301 are appropriately dismissed. *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1204 (C.D. Cal. 2015).

---

[5] Plaintiff does not address and, thus, concedes Defendants' NLRA preemption argument. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp. 2d 1197 (N.D. Cal. 2013) (holding that argument was conceded where the defendant failed to address it in its opposition).

The NLRA protects employees' right to engage in "concerted activities" for mutual aid or protection, and to engage in union activities. *See* 29 U.S.C. § 157-158. A claim based on conduct that is arguably protected or prohibited by the Act is preempted (*i.e.*, "*Garmon*" preemption) and is subject to the exclusive jurisdiction of the NLRB. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959); *Williams v. Hollywood Park Racing Ass'n LLC*, 2012 WL 1425152, *1 (C.D. Cal. Apr. 24, 2012). Thus, at a minimum, the NLRA preempts any claim for discharge based on union activity. *Martinez v. UPS*, 2013 WL 3389550, *6 (C.D. Cal. July 8, 2013). "It is not the label affixed to the cause of action . . . that controls the determination" of *Garmon* preemption. *United Assoc. of Journeymen & Apprentices, v. Borden*, 373 U.S. 690, 698 (1963). Where an alleged claim is based "at least in part on union activities" it is preempted. *See Brands v. First Transit, Inc.*, 278 Fed. Appx. 722, 724 (9th Cir. 2008).

### 2. The Court's March 15, 2018 Order in *Kroeger I* is "Law of the Case" and Requires Dismissal of Plaintiff's Claims

Pursuant to the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Thus, "a 'decision on a factual or legal issue' ordinarily 'must be followed in subsequent proceedings in the same case.'" *Oliver v. SD-3C LLC*, 2016 WL 5950345, *4 (N.D. Cal. Sept. 30, 2016) (*quoting Pit River Home & Agricultural Coop. Ass'n v. United States*, 30 F.3d 1088, 1096-97 (9th Cir. 1994)). The law of the case doctrine applies to issues decided explicitly and by implication in a prior ruling. *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (holding that the law of the case doctrine applies even if the previous ruling was "cryptic and ambiguous"); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (holding that, under the law of the case doctrine, the applicability of the decision does not turn on "whether, or how well, [the court] explained the decision"). Law of the case doctrine "serves to advance the principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided." *Chloe SAS v. Sawabeh Information Servs. Co.*, 2015 WL 12763541, *6 (C.D. Cal. June 22, 2015) (*quoting United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (internal quotation marks omitted)). In addition, when the allegations made in an amended complaint are substantively identical to one previously dismissed for failure to state a claim, the law of the case doctrine applies and necessitates dismissal of the amended complaint. *See, e.g., Baymiller v. Guarantee Mut. Life Co.*, 2000 WL 33774562, *2 (C.D. Cal. 2000); *see also Munoz v. PHH Corp.*, 2015 WL 2454270, *8-10 (E.D. Cal. May 22, 2015).

In this case, the FAC largely repleads the same core factual allegations that Plaintiff alleged in the original Complaint in *Kroeger I* except that Plaintiff has carefully omitted references to the CBA, union rules, his grievances, and the NLRA. However, these omissions do not save Plaintiff's claims from preemption under the LMRA and the NLRA for the reasons set forth in the Court's March 15, 2018 Order.[6] *See Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1054 (N.D.

---

[6] In addition, the arbitration decision rejecting Plaintiff's wrongful termination claim provides additional grounds for preemption. *See, e.g., Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1046 (9th Cir. 2016) (holding that where a plaintiff's claim has progressed through arbitration, the question of "whether that claim is based on a right conferred by the CBA must be

Cal. 2005) (holding that plaintiff does not avoid preemption by failing to reference the CBA because "[b]y careful pleading, a plaintiff cannot avoid federal preemption"); *see also Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1151 (N.D. Cal. 2019) (plaintiff "states that they 'do not assert any concerted union activities.' . . . [T]he Court is not required to accept these assertions").  In *Kroeger I*, the Court based its preemption determination on, among other things, allegations related to "(a) failing to grant Plaintiff a light duty work assignment; (b) assigning overtime to probationary employees; (c) assignment to deployments; (d) pay during deployments; (e) "show up" compensation for the day Plaintiff was removed from a flight; and (f) writing up and disciplining Plaintiff."  *Kroeger*, 2018 WL 1357363, *4.  These identical allegations are central to the claims alleged in Plaintiff's FAC.  *See, e.g.*, FAC ¶¶ 18-19, 31, 43, 49, 95(3), and 95(7).

In addition, Plaintiff continues to rely on a number of adverse actions that the Court previously determined in *Kroeger I* were governed by the CBA and, therefore, cannot support his FEHA and common law claims.  For example, Plaintiff's allegation that Bantilan assigned overtime work to probationary employees rather than him is governed by Article 23.00 of the CBA, which addresses the method of assigning overtime to employees, including probationary employees.  Similarly, Plaintiff's allegation that Vertex failed to compensate him for hours and money lost by being removed from a flight is governed by Article 22.3 of the CBA, which addresses compensation for employees who report to scheduled shifts for work that is not available.  Plaintiff's allegation that Vertex failed to schedule him for deployments is governed by Article 21.00 of the CBA, which addresses the method of selecting employees for temporary assignments away from their normal work locations, and Article 4.00 of the CBA, which gives management authority over shifts, performance standards, rules of conduct, and other issues.  Finally, Plaintiff's allegations regarding various forms of discipline he suffered is governed by Article 18.00 of the CBA, which describes situations in which the employer may impose disciplinary action on employees.  Thus, despite the lack of references to the CBA, in order for the Court to determine if any of the purportedly adverse actions violated the law, the Court must "determine whether [the company] was acting consistently with its duties under the CBA . . . by interpreting [its] provisions."  *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir. 1991); *see also Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir. 1988) (holding that the plaintiff's claims were preempted where the court must "interpret the CBA to determine the scope of [defendant's] authority" under CBA); *Silva v. USF Reddaway Inc.*, 2017 WL 2117397, *5 (N.D. Cal. May 15, 2017) (holding that Section 301 preemption applies because "the nondiscriminatory reasons that [the defendant] has given for not assigning [plaintiff] to line driving will require considering its duties under the CBA."); *Carr v. Allied Waste Sys. of Alameda County*, 2010 WL 4916433, *15 (N.D. Cal. Nov. 23, 2010) (holding that a "wrongful termination . . . claim is preempted where the court would be required to 'analyze and interpret the [just cause] provisions of the CBA to determine whether [the plaintiff] . . . was wrongfully terminated'").

Similarly, the identical complaints that resulted in the Court's conclusion that Plaintiff's claims were preempted by the NLRA in *Kroeger I* are also alleged in the FAC, including complaints

---

considered in light of the arbitrator's decision").  In the FAC, Plaintiff alleges a wrongful termination claim, which directly rejects the arbitrator's factual and legal determinations.  However, resolving Plaintiff's wrongful termination claim would require the Court to interpret and apply the provisions of the CBA relied on by the arbitrator.

about alleged threats and complaints about overtime allocation and entitlement to certain other benefits under the CBA.  *See, e.g.*, FAC, ¶¶ 19, 33, 49.  Claims based on these complaints, which were subject to contractual grievances under the CBA and concerted efforts by Plaintiff and his fellow employees to vindicate their contractual rights are precisely the type of claims that are preempted by the NLRA.  *See Martinez*, 2013 WL 3389550, *5-6 ("Plaintiff's FEHA Retaliation Claim is based on his assertion that he was terminated in part as a result of his union activities: specifically here, his 'use of the grievance procedures to complain about workers [sic] rights to be paid.' . . . This falls squarely within the type of claim preempted . . . [by] the NLRA."); *Johnson v. Kaiser Found. Hosps.*, 2017 WL 2200140, *10 (Cal. Ct. App. May 19, 2017) ("[A]n employee acting alone may nonetheless engage in concerted activity by protesting –  informally or through an established grievance procedure –  that a workplace situation violates the [CBA]"); *Pantazis v. Fior D'Italia, Inc.*, 1994 WL 519469, *6-7 (N.D. Cal. Sept. 20, 1994) ("California . . . claims for wrongful discharge in breach of 'public policy' are preempted where they are based on conduct regulated by the [NLRA]"); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989) (holding that common law wrongful termination/retaliation claim preempted by the NLRA).

Accordingly, because Plaintiff's first cause of action for wrongful termination in violation of public policy, second cause of action for retaliation in violation of public policy, third cause of action for disability discrimination in violation of FEHA, fourth cause of action for hostile work environment harassment in violation of FEHA, and sixth cause of action for failure to prevent harassment, discrimination, or retaliation in violation of FEHA are preempted by the LMRA and the NLRA, Plaintiff's first, second, third, fourth, and sixth causes of action are dismissed.

> B.   **Plaintiff's Fifth Cause of Action for Failure to Timely Provide Payroll and Personnel Records Fails.**

In his fifth cause of action, Plaintiff alleges a claim for failure to timely provide payroll and personnel records based on California Labor Code §§ 226, 432, and 1198.5.  In their Motion to Dismiss, Defendants argue that Plaintiff cannot state a claim under Section 226, 432, or 1198.5 and that Plaintiff's Section 1198.5 claim is preempted by the LMRA.  In his Opposition, although Plaintiff argues that his Section 1198.5 claim is not preempted by the LMRA, Plaintiff does not address and, thus, concedes that he cannot state a claim under Section 226, 432, or 1198.5.  *See Ramirez.*, 941 F.Supp. 2d 1197 (holding that argument was conceded where the defendant failed to address it in its opposition); *see also, Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, *6 n. 2 (N.D. Cal. Mar. 10, 2010) (holding that plaintiff's failure to address in opposition brief claims challenged in a motion to dismiss, an "abandonment of those claims") (*citing Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)); *Sportscare of America, P.C. v. Multiplan, Inc.*, 2011 WL 589955, *1 (D.N.J. Feb. 10, 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."); *Scott v. City of Phoenix*, 2011 WL 3159166, *10 (D.Ariz. Jul. 26, 2011) (holding that failure to oppose statute of limitations argument constituted waiver); *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1147 n. 7 (E.D. Cal.2005) ("At any rate, failure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim."); *In re Online DVD Rental Antitrust Litig.*, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (holding that, absent unusual circumstances, failure to respond to argument on merits "viewed as grounds for waiver or concession of the argument").

In addition, even if Plaintiff had responded to Defendants' argument, the Court concludes

that Plaintiff's Section 432 claim also fails on the merits.  Section 432 does not provide a statutory penalty or any method for private enforcement.  Because the statute does not contain a private right of action, it cannot form the basis for Plaintiff's claim.  *See Gunawan v. Howroyd-Wright Emp't Agency*, 997 F. Supp. 2d 1058, 1067-68 (C.D. Cal. 2014) (holding that private right of action must be expressed in direct and "clear, understandable, unmistakable terms").

Moreover, at the time of Plaintiff's counsel's request for records, Section 226(b) only required Vertex to allow Plaintiff to "inspect or copy" certain records, but did not require Vertex to mail a copy of those records to Plaintiff's counsel.  *See* Cal. Lab. Code § 226(b) (eff. Jan. 1, 2017 – Dec. 31, 2018).  The right to "receive a copy" of the records did not begin until January 1, 2019.  *See* Cal. Lab. Code § 226(b).  Because Vertex had no obligation to provide copies of records at the time of the request, its alleged untimely mailing of those records to Plaintiff's counsel did not violate Section 226.  *See, e.g., Davis v. Harris*, 61 Cal. App. 4th 507, 511 (1998) (holding that a change in statutory language changes its legal effect).

Finally, Section 1198.5, which entitles an employee to inspect personnel records, exempts certain employees covered by a CBA if that CBA provides: (a) for wages, hours of work, and working conditions; (b) a procedure for the inspection and copying of personnel records; (c) premium wage rates for overtime hours; and (d) a regular rate of pay of not less than 30 percent more than the state minimum wage rate.  Cal. Lab. Code § 1198.5(q)(1)-(4).  In this case, the applicable CBAs governed Plaintiff's terms and conditions of employment, and specified his wages, hours, working conditions, and overtime rates.  In addition, the CBAs provided a procedure for Vertex's sharing of "reasonable and pertinent" employee records including personnel notices, evaluations, and other documents.  Thus, all the requirements for Section 1198.5's exemption for certain employees covered by a CBA were satisfied and, thus, Plaintiff's claim fails.  *See Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019).  Moreover, any dispute regarding the applicability of Section 1198.5's exemption necessarily requires the interpretation of the CBAs and, thus, Plaintiff's claim for violation of Section 1198.5 is preempted by the LMRA.  *See Raphael v. Tesoro Refining and Mktg. Co. LLC*, 2015 WL 3970293, *7 (C.D. Cal. June 30, 2015) (holding that labor code claim preempted where court must interpret the CBA to "determine whether the disputed provision satisfies" statutory CBA exemption).

Accordingly, Plaintiff's fifth cause of action for failure to timely provide payroll and personnel records is dismissed.

C. **The Arbitration Award Precludes Plaintiff's First Cause of Action for Wrongful Termination in Violation of Public Policy and Second Cause of Action for Retaliation in Violation of Public Policy.**

In their Motion to Dismiss, Defendants argue that the arbitration decision precludes Plaintiff's first cause of action for wrongful termination in violation of public policy and second cause of action for retaliation in violation of public policy.  In his Opposition, Plaintiff argues that the arbitration decision does not preclude his claims for violation of FEHA, but Plaintiff fails to address and, thus, concedes Defendants' argument that the arbitration award precludes his claims for termination and retaliation in violation of public policy.  *See Ramirez*, 941 F.Supp. 2d 1197 (holding that argument was conceded where the defendant failed to address it in its opposition).

In addition, even if Plaintiff had addressed Defendants' argument, the Court concludes that the arbitration award precludes Plaintiff's claims for termination and retaliation in violation of public policy.  Res judicata, or claim preclusion, "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action."  *Guevara v. Marriott Hotel Servs., Inc.*, 2011 WL 3419510, *4 (N.D. Cal. Aug. 4, 2011) (*citing Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).  A party cannot avoid claim preclusion by pleading a new theory of recovery, seeking different relief, or adding new facts supporting recovery.  *Hacienda Mgm't v. Starwood Capital Group Global 1 LLC*, 2012 WL 2838708, *3 (N.D. Cal. July 10, 2012).  Collateral estoppel, or issue preclusion, "bars the relitigation of issues actually adjudicated in previous litigation between the same parties."  *Clark*, 966 F.2d at 1320.  Issue preclusion "forecloses litigation . . . of those issues of fact or law that were actually litigated . . . whether or not on the same or a different claim."  *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979).  Claim and issue preclusion apply not only to litigation, but also to arbitration proceedings.  See Clark, 966 F.2d at 1321; *Kelly v. Vons Cos., Inc.*, 67 Cal. App. 4th 1329, 1336 (1998) ("Once a valid award is made by the arbitrator, it is conclusive on matters of fact and law").

In this case, Plaintiff predicates his wrongful termination and retaliation claims on the allegations that his termination was retaliatory and based on a false allegation of timecard fraud.  *See, e.g.*, FAC, ¶¶ 6(e), 58-69, 86, and 88.  However, these are the same allegations considered and rejected by the arbitrator in a multi-day arbitration proceeding in which Plaintiff was represented by counsel, had a full opportunity to present evidence and testimony, and had the opportunity to cross-examine witnesses.  In rejecting Plaintiff's claim that his termination was retaliatory, the arbitrator found that Plaintiff presented no evidence that Vertex had an improper or retaliatory motive in terminating Plaintiff's employment.  These findings by the arbitrator are dispositive of Plaintiff's wrongful termination and retaliation claims.[7]  Therefore, claim and issue preclusion bar Plaintiff's wrongful termination and retaliation claims.  *See, e.g., Brock v. Lucky Stores, Inc.*, 23 Fed. Appx. 709, 712 (9th Cir. 2001) (holding that arbitrator's decision that employer "had just cause for terminating [plaintiff]" had collateral estoppel effect, baring wrongful termination claim); *Wade v. Ports Am. Mgm't Corp.*, 218 Cal. App. 4th 648, 656 (2013) ("[A] labor arbitration award, pursuant to a CBA, may bar the employee from bringing a common law claim alleging retaliation and wrongful termination . . . if the arbitration . . . addressed the same cause of action"); *Kelly,* 67 Cal. App. 4th at 1332 ("[L]abor arbitration may be given collateral estoppel effect in an employee's subsequent lawsuit").

---

[7] Moreover, to the extent Plaintiff's wrongful termination or retaliation claims are based on a theory he could have raise in arbitration but did not, those claims are also barred.  *See, e.g., Ross v. Kaiser Permanente*, 2015 WL 12662347, *3 (C.D. Cal. Sept. 14, 2015) (holding that claim preclusion barred claim "[e]ven though the current action also alleges racial discrimination [because] this novel theory as to Plaintiff's termination 'could have been asserted'" in the prior action); *Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 482 (2001) (holding that the plaintiff was collaterally estopped from relitigating racial discrimination claim because even if "the issue of discrimination was not litigated in the administrative or mandate proceedings," he did not show that "he was prevented from introducing admissible evidence relevant to that issue"); *Conner v. Dart Transport. Serv.*, 65 Cal. App. 3d 320, 322-23 (1976) (holding that collateral estoppel barred the employee's cause of action for wrongful discharge where labor arbitration established that employee was fired for dishonesty).

Accordingly, Plaintiff's first cause of action for wrongful termination in violation of public policy and second cause of action for retaliation in violation of public policy are dismissed .[8]

### D.     Retaliation in Violation of Public Policy is Not a Claim

In his second cause of action, Plaintiff alleges a claim for retaliation in violation of public policy.  In their Motion to Dismiss, Defendants argue that retaliation in violation of public policy is not a claim.  In his Opposition, Plaintiff does not address and, thus, concedes Defendants' argument that retaliation in violation of public policy is not a claim.  *See Ramirez*, 941 F.Supp. 2d 1197 (holding that argument was conceded where the defendant failed to address it in its opposition).

In addition, even if Plaintiff had addressed Defendants' argument, the Court concludes that Plaintiff's claim also fails on the merits.  In California, violation of public policy claims "do not encompass other adverse employment actions shy of termination."  *Hill v. Bayer Healthcare LLC*, 2010 WL 3504837, *8 (N.D. Cal. Sept. 7, 2010); *Stambanis v. TBWA Worldwide, Inc.*, 2019 WL 3997257, *5 (C.D. Cal. Aug. 23, 2019) (holding that there are "no common law claims for discrimination … and retaliation in violation of public policy.").  Therefore, a plaintiff may not base a violation of public policy claim on discrimination or retaliation alone.  *Id.*; *Hall v. Apartment Inv. and Mgmt. Co.*, 2008 WL 4415053, *4 (N.D. Cal. Sept. 26, 2008) (holding that a plaintiff "may not base a [public policy] claim on discrimination or retaliation alone").  Accordingly, because Plaintiff cannot base a violation of public policy claim on the alleged retaliation he suffered, Plaintiff's second cause of action for retaliation in violation of public policy is dismissed.

### E.     Plaintiff Failed to State a Claim for Disability Discrimination

In his third cause of action, Plaintiff alleges a claim for disability discrimination.  In their Motion to Dismiss, Defendants argue that Plaintiff has failed to adequately allege a claim for disability discrimination.  In his Opposition, Plaintiff does not address and, thus, concedes Defendants's argument that he failed to state a claim for disability discrimination.  *See Ramirez*, 941 F.Supp. 2d 1197 (holding that argument was conceded where the defendant failed to address it in its opposition).

In addition, even if Plaintiff had addressed Defendants' argument, the Court concludes that Plaintiff's claim also fails on the merits.  To state a prima facie case of disability discrimination, a plaintiff must allege that he: (1) suffered from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations; (3) was subjected to an adverse employment action; and (4) circumstances suggesting a discriminatory motive.  *Jackson v. Kaplan Higher Ed., LLC*, 106 F. Supp. 3d 1118, 1123-24 (E.D. Cal. 2015).  A plaintiff must also allege that discrimination was a substantial motivating factor for the alleged adverse action.  *Harris v. City of*

---

[8]  In addition, to the extent Plaintiff's third cause of action for disability discrimination in violation of FEHA, fourth cause of action for hostile work environment harassment in violation of FEHA, and sixth cause of action for failure to prevent harassment, discrimination, or retaliation in violation of FEHA are based on Plaintiff's claim that his termination was retaliatory, those claims are also barred by claim and issue preclusion and dismissed.

*Santa Monica*, 56 Cal.4th 203, 232 (2013).

In this case, Plaintiff has failed to adequately allege that he was qualified and able to perform his essential job duties. Specifically, Plaintiff failed to allege "what [he] can do or what the essential elements of [his] job are or might be with or without reasonable accommodations." *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1139 (E.D. Cal. 2010); *Davis*, 2016 WL 10966411, *8 (plaintiff must allege a "factual basis . . . that he can perform the essential functions . . . with or without accommodation"). In addition, Plaintiff has failed to allege any facts suggesting a discriminatory motive. *See, e.g., Banaga v. Gov't Employees Ins. Co.*, 2019 WL 2451418, *9 (S.D. Cal. June 12, 2019) (dismissing FEHA discrimination claim because there were not sufficient allegations "of discriminatory motive"); *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 907 (E.D. Cal. 2017) (holding that assertion that adverse action was based on disability insufficient to state a claim). Moreover, Vertex's failure to accommodate Plaintiff cannot form the basis of a disability discrimination claim. *See Doe v. Dep't of Corr. & Rehab.*, 43 Cal. App. 5th 721, 735-36 (2019) (holding that "failure to reasonably accommodate an employee's disability" does not "qualify as [an] adverse action underlying a discrimination or retaliation claim").

Accordingly, Plaintiff's third cause of action for disability discrimination is dismissed.

### F.    Plaintiff Failed to State a Disability Harassment Claim

In his fourth cause of action, Plaintiff alleges a claim for hostile work environment harassment based on his disability. In their Motion to Dismiss, Defendants argue that Plaintiff's hostile work environment harassment based on disability claim fails because it is based on non-actionable personnel management actions and because he has failed to allege severe or pervasive harassment. In his Opposition, Plaintiff does not address and, thus, concedes Defendants' arguments that his claim is based on non-actionable personnel management actions and that he has failed to allege severe or pervasive harassment. *See Ramirez*, 941 F.Supp. 2d 1197 (holding that argument was conceded where the defendant failed to address it in its opposition).

In addition, even if Plaintiff had addressed Defendants' arguments, the Court concludes that Plaintiff's claim also fails on the merits. To state a prima facie claim of disability-based harassment under FEHA, a plaintiff must allege that: "(1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected class; and (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment." *Mendoza v. Staples, Inc.*, 2014 WL 6670221, *4 (C.D. Cal. Nov. 24, 2014). To satisfy this standard, a plaintiff must allege that he was subject to disability-based harassment that "would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee." *Schreiner v. Lockheed Martin Corp.*, 2014 WL 6630055, *3 (C.D. Cal. Nov. 20, 2014). Therefore, the harassment must be "sufficiently severe or pervasive" so as to alter the terms and conditions of employment. *Mendoza*, 2014 WL 6670221, *5. A plaintiff does not state a harassment claim by alleging "occasional, isolated, sporadic, or trivial" misconduct. *Lurie v. Konica Minolta Bus. Sols. U.S.A.*, 2016 WL 1408056, *3 (C.D. Cal. Apr. 11, 2016). Instead, the alleged harassment must be "repeated, routine, or generalized in nature." *Id.* In evaluating whether the work environment is sufficiently hostile to state a claim, the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Hurd v. Am. Income Life Ins.*, 2013 WL 5575073, *5 (C.D. Cal. Oct. 10, 2013).

In this case, Plaintiff's disability harassment claim is based on what are generally described as personnel management actions.  California law distinguishes "between discriminatory employment actions and harassment."  *Ramirez v. Little Caesars Enters., Inc.*, 2018 WL 5816107, *6 (C.D. Cal. Nov. 2, 2018).  Specifically, personnel management actions do not constitute harassment.  *Id.*  Applying this framework, courts have held that personnel management acts such as firing, evaluation, and work assignments do not support a harassment claim.  *See, e.g., Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013).  Plaintiff alleges that Vertex failed to assign him to deployments, did not provide him a preferred accommodation, did not pay certain CBA wage premiums, assigned overtime to a probationary employee, scheduled employee breaks late, assigned him work he did not desire, and ultimately suspended him and terminated his employment.  However, courts have repeatedly held that such actions constitute personnel management acts that cannot support a harassment claim.  *See, e.g., Ramirez*, 2018 WL 5816107, *6 (granting motion to dismiss because "declining evaluation and accommodation for disabilities, and making decisions on whether to terminate" are personnel management actions); *Duran v. DHL Express (USA), Inc.*, 2016 WL 742864, *7 (C.D. Cal. Feb. 24, 2016) (holding that "refusal . . . to accommodate Plaintiff does not qualify as . . . pervasive or severe conduct that would create a hostile work environment under the FEHA").

Finally, Plaintiff's attempt to support his disability harassment claim by relying upon Bantilan's alleged remark to a third party (which Plaintiff learned about several days after the fact) that he would shoot employees, Bantilan's allegedly hostile body language while in Plaintiff's work area, and Sichenzia's statement that Kroeger was not fit for duty in front of co-workers fails because those allegations fall well short of severe or pervasive harassment.  *See, e.g., Molina v. Los Angeles Cnty., Dep't of Mental Health*, 58 Fed. Appx. 311, 315 (9th Cir. 2003) (holding that docked pay and rude treatment from supervisor was not sufficiently severe or pervasive); *McCree v. Dep't of Conservation*, 2014 WL 1936504, *1, *4 (N.D. Cal. May 14, 2014) (holding that berating plaintiff about work and accusing him of "bringing down the department" did not create a hostile work environment).

Accordingly, Plaintiff's fourth cause of action for hostile work environment harassment is dismissed.[9]

**IV.    Conclusion**

---

[9] Plaintiff did not address and, thus, concedes Defendants' argument that his sixth cause of action for failure to prevent harassment, discrimination, and retaliation fails.  *See Ramirez*, 941 F.Supp. 2d 1197 (holding that argument was conceded where the defendant failed to address it in its opposition).  In addition, even if Plaintiff had addressed Defendants' argument, the Court concludes that Plaintiff's sixth cause of action fails because it is derivative of his claims for disability discrimination and harassment and those claims fail for the reasons discussed above.  Accordingly, Plaintiff's sixth cause of action is dismissed.

      For all the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's Motion to Remand is **DENIED**.  Plaintiff's FAC is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**.[10]  The parties are ordered to meet and confer and agree on a joint proposed Judgment which is consistent with this Order.  The parties shall lodge the joint proposed Judgment with the Court on or before July 7, 2020.  In the unlikely event that counsel are unable to agree upon a joint proposed Judgment, the parties shall each submit separate versions of a proposed Judgment along with a Joint Statement setting forth their respective positions no later than July 7, 2020.

      IT IS SO ORDERED.

---

[10]  Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting a plaintiff to amend would be an exercise in futility.  *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").  In this case, Plaintiff has had two attempts to allege a claim against Defendants.  In addition, Plaintiff has not only failed to indicate in his Opposition what additional facts he could allege that would allow him to state a viable claim against Defendants, but he has failed to even address most of the arguments made in Defendants' Motion to Dismiss.